**Ruth Ann BOUGHER, Plaintiff,**

v.

**UNIVERSITY OF PITTSBURGH, Wesley W. Posvar, Trevor Melia and Maryann Bishop Coffey, Defendants.**

**Civ. A. No. 86–1096.**

United States District Court,
W.D. Pennsylvania.

March 14, 1989.

Matthew E. Jackson, Jr., Pittsburgh, Pa., for plaintiff.

Martha Hartle Munsch, Pittsburgh, Pa., for defendants.

## MEMORANDUM AND ORDER

SMITH, District Judge.

*The History:*

This quagmire began as a *pro se* complaint filed May 27, 1986, in which plaintiff alleged that the University of Pittsburgh had engaged in a policy and practice of sexual harassment and discrimination against her and against other female students. Actions such as "failing to protect [Pitt's] unsuspecting female students from the devious use of authority to emphasize sexuality in a manner which prevents or impairs the student's full enjoyment of edu-

cational benefits"[1] allegedly caused plaintiff a loss of educational opportunities, and consequently of opportunities for employment and income. Wesley Posvar, the chancellor of the University of Pittsburgh, was alleged to have negligently failed to implement policies which would prohibit gender-based harassment. Both Posvar and Pitt were alleged to have thereby violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. Plaintiff had retained an attorney, and counsel for defendants Pitt, Posvar, and Melia had filed a motion to dismiss for failure to state a claim, by the end of July, 1986.

The litigation took a further step on August 21, 1986, when plaintiff filed a counseled, Amended Complaint. This complaint asserted that the University of Pittsburgh, Wesley Posvar, Trevor Melia, and Maryann Bishop Coffey had violated not only Title IX, but also 42 U.S.C. § 1985(3). All defendants except Melia were alleged to have violated 42 U.S.C. § 1983 as well. The defendants filed their answer September 2, 1986, and withdrew their motions to dismiss at a status conference held before Judge Teitelbaum on September 29, 1986.

Discovery was marred by repeated motions asserting irregularities, bad faith, and criminal conduct. The first exchange, in November, 1986, saw plaintiff unsuccessfully attempting to suppress her own deposition transcript because the court reporter would not provide her a copy for examination prior to receiving payment. The second, in November and December of 1986, saw defendants seeking sanctions against plaintiff's counsel for his failure to have plaintiff's parents appear for their depositions. The closing days of 1986 also were the beginning of a protracted skirmish over defendants' attempt to schedule an independent medical examination of plaintiff, to obtain plaintiff's medical history, and to depose plaintiff's psychologist. On December 22, 1986, Judge Teitelbaum ordered plaintiff to submit to a mental examination, and denied plaintiff's request for a protective order, thereby allowing deposition of plaintiff's psychologist, and granted the first extension of the discovery deadline.

Plaintiff began 1987 as 1986 had ended, with a discovery motion, this one seeking a psychiatric examination of defendant Melia. Judge Teitelbaum denied this specious request and also the attempt to block defendants' obtaining of plaintiff's medical records, by orders dated January 14, 1987, and January 13, 1987. The order permitting defendant access to plaintiff's medical records required defendant to keep the records confidential and placed the filed medical records under seal. Unhappy with the order for psychiatric examination, plaintiff again filed a request for a protective order, seeking to have the Court appoint the examining psychiatrist and to have certain areas of inquiry blocked. Meanwhile, defendants were attempting to compel the depositions of the von Eckartsbergs, plaintiff's psychologist/counselors, and plaintiff was seeking an order compelling defendants to produce peer review records of defendant Melia, an associate professor tenured at Pitt in 1972. Plaintiff also sought once more on February 3, 1987, to obtain a court order for Melia's psychiatric examination, which was denied.

On March 6, 1987, Judge Teitelbaum issued ground rules for the psychiatric examination of plaintiff, denied plaintiff's attempt to obtain defendant Melia's 1972 peer review records, and extended the discovery deadline again to permit the Von Eckertsbergs' depositions. March was consumed, however, by a conflict which arose at plaintiff's long-delayed examination which led to the two motions for sanctions by defendants, two responses by plaintiff, and two court orders, on April 8, 1987, and April 15, 1987.

Also in April 1987, plaintiff moved to amend her complaint to add additional state law breach of contract counts. Meanwhile, plaintiff filed with the Court of Appeals for the Third Circuit a Petition for a Supervi-

---

1. This allegation is an almost verbatim quote of the definition of sexual harassment by the National Advisory Council of Women's Educational Programs. See Keller, Consensual Amorous Relationships Between Faculty and Students, 15 J.Coll. and Univ.L. 21, 22 (1988).

sory Writ of Mandamus once more attempting to block defendants' psychiatric examination. This resulted on April 22, 1987, in a stay of all proceedings, until the Third Circuit denied plaintiff's invitation to micro-manage the micro-management of discovery that Judge Teitelbaum had been forced to undertake, on May 15, 1987. Plaintiff's petition for writ of certiorari was filed in the Supreme Court, and was denied on November 30, 1987.

The matter was transferred to Judge Standish, who issued a new discovery schedule on December 21, 1987, calling for discovery to be completed by March 3, 1988, almost two years from the filing of the complaint. Judge Standish also granted plaintiff's renewed motion to amend her complaint, by a Memorandum and Order of February 4, 1988. Plaintiff's Second Amended Complaint was filed February 26, 1988, and was met immediately with a Motion to Strike filed by defendant because the pleading did not comply with Judge Standish's order. The Motion to Strike was granted in part by Judge Standish on March 9, 1988. Defendants' Answer was filed March 25, 1988, bracketed by yet another discovery dispute.

The litigation was returned to Judge Teitelbaum in May, 1988, due to an objection to Judge Standish's participation in the case. Defendants filed their Motion for Summary Judgment, currently before the Court, on May 20, 1988. Plaintiff, in addition to a reply, filed an *ad hominem* attack against Judge Teitelbaum, seeking recusal, in July, 1988. The recusal was denied, but the matter was reassigned to this judge by Chief Judge Cohill on November 8, 1988.

We have chosen to review the procedural history of this action at some length, not to assess blame (for it is not the duty of a trial judge to act as presiding responsible adult), but rather to observe that the delay that litigants suffer is frequently the result, in this case and others, of unnecessary, ill-tempered, and repetitive motions practice. The time spent attending to a needless dispute in this case has a ripple effect throughout the entire system. For that reason, we call the attention of the entire trial bar once again to Local Rule 4, and Fed.R.Civ.P. 11.

*The causes of action:*

Turning to the merits of the action, we look first to the allegations of plaintiff's Second Amended Complaint, filed February 26, 1988, which sets forth the following: Plaintiff, Ruth Ann Bougher, a female, has been a student at the University of Pittsburgh, a state institution receiving federal funds, since 1976; since that time, defendant Trevor Melia, a professor of rhetoric, has continuously harassed and intimidated plaintiff; from 1976 until August 1986, all defendants have engaged in a pattern of sexual harassment and discrimination against plaintiff and against other (presumably female) students; the defendants have done this generally by failing to have an adequate internal grievance procedure to resolve charges of sexual harassment, and specifically by failing to investigate, prevent or control the harassment plaintiff suffered at the hands of defendant Melia, even after plaintiff had presented a complaint to the University; further, Pitt allegedly fraudulently represented to plaintiff that it would investigate and resolve her complaint, but not only did not do so, but also retaliated against her because of her complaints. By taking these actions, defendants violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, 42 U.S.C. § 1983, and 42 U.S.C. § 1985(3). Pendent claims of breach of contract, intentional infliction of emotional distress, and harassment under Pennsylvania common law are also asserted.

Defendants' Answer generally denies the general allegations of plaintiff. Defendants also assert that plaintiff failed to state a claim, that any claims that are stated are time-barred, and that this Court has no jurisdiction over the Title IX complaint because the individual defendants were not recipients of any federal funds. Defendant Pitt additionally asserts the Eleventh Amendment as a defense, and all defendants claim absolute and qualified immunity for any actions taken.

To put substance on these formless claims of harassment and constitutional vi-

olation, we examine plaintiff's evidence. In ruling on this motion for summary judgment under Fed.R.Civ.P. 56, we consider whether the plaintiff has produced evidence of record which would establish the existence of every element essential to her claims on which she bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). There must be evidence on the basis of which a factfinder could reasonably find for plaintiff if it accepted her evidence as true. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986).

*Title IX:*

■ Our initial inquiry must be whether this court has jurisdiction over plaintiff's Title IX claims.[2] The Supreme Court, in *Grove City College v. Bell,* 465 U.S. 555, 570–74, 104 S.Ct. 1211, 1219–22, 79 L.Ed.2d 516 (1984) held that Title IX coverage is triggered only when "an education program or activity" is receiving federal aid. 465 U.S. 570 n. 20, 104 S.Ct. at 1220 n. 20. See 20 U.S.C. § 1681(a). Plaintiff does not dispute defendants' evidence that defendants Posvar, Melia, and Coffey do not receive federal funds, and therefore no Title IX claim can be stated against them. It is likewise undisputed that the University of Pittsburgh does receive federal funds and that we have jurisdiction over a Title IX claim against it.

■ Plaintiff in this action advanced three theories for her Title IX claim against Pitt. First, she alleged, Pitt discriminated against her by failing to restrain a professor at Pitt who, allegedly, sexually harassed her. Alternatively, Pitt is allegedly responsible for the environment which permitted defendant Melia to sexually harass her. Plaintiff argues that either or both of these failings on the University's part, which by analogy to Title VII litigation would be described as *quid pro quo* harassment and "hostile environment" harassment respectively, have subjected her to actionable discrimination. Plaintiff additionally asserts a claim against Pitt because it allegedly has failed to comply with regulations promulgated by the Department of Education, Office of Civil Rights, which require a recipient of federal funds to adopt grievance procedures for resolution of sexual harassment claims.

That much being said, what must plaintiff show in order to prove a *prima facie* case? Title IX states, with exceptions not relevant here, that no person shall, on the basis of sex:

> be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance

20 U.S.C. § 1681. To prove a prima facie case, plaintiff must show 1) that she was excluded from participation in or denied the

---

**2.** Plaintiff has a private cause of action, despite the absence of express creation of such by Congress, under *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). The Supreme Court in that instance, and the two lower courts which have considered Title IX claims since then have recognized, as plaintiff has not, that Title IX's remedies are injunctive and declaratory in nature. *See Alexander v. Yale University,* 631 F.2d 178 (2d Cir. 1980); *Moire v. Temple University School of Medicine,* 613 F.Supp. 1360 (E.D.Pa.1985) *aff'd mem.* 800 F.2d 1136 (3d Cir.1986). Following the Supreme Court's direction that where Congress expressly provides a remedy the courts must be wary of reading others into it, see *Transamerica Mortgage Advisors v. Lewis,* 444 U.S. 11, 18–19, 100 S.Ct. 242, 246–47, 62 L.Ed.2d 146 (1979), as well as the sound philosophy expressed in the concurring opinion of Justice

(now Chief Justice) Rehnquist, joined by Justice Stewart, in *Cannon v. University of Chicago,* supra, 441 U.S. at 717–18, 99 S.Ct. at 1968–69, we decline plaintiff's invitation to legislate a damages remedy into existence. Plaintiff cannot state a damages claim for her "lost employment opportunities" under Title IX, even if she had set forth a scintilla of evidence to support her allegations of loss.

The amendments to the attorney's fee statute, 42 U.S.C. § 1988 to include private suits brought to enforce Title IX plainly may not be used as argument for implying an additional *remedial* scheme. Recognizing this, activist commentators have either invited the judiciary to expand Title IX by fiat, see Schneider, Sexual Harassment and Higher Education, 65 Texas L.R. 525 (1987), or invent a new tort, see Note, Theory of Tort Liability for Sexual Harassment in the Workplace, 134 U.Penn.L.R. 1461 (1986). We decline the invitation.

benefits of or subjected to discrimination in an educational program; 2) that the program receives federal assistance; and 3) that the exclusion was on the basis of sex, i.e., gender.

Plaintiff does not state, nor do the facts allege, a Title IX claim against Pitt. Even accepting plaintiff's uncorroborated allegations as true (and leaving aside such overwrought prose as "instead of being her mentor Dr. Melia became her tormentor" [3]), she does not allege the denial of any benefit by Pitt to her on the basis of sex. For that matter, she does not allege defendant Melia discriminated in any respect either. There is therefore, no *quid pro quo* claim. The plaintiff's complaint and evidence begin and end with an alleged consensual sexual relationship which began in 1976 when she was over twenty-one years old and ended at the latest in 1983, more than two years prior to the filing of this complaint.

An extensive recital of plaintiff's evidence is not necessary. She portrays herself as the victim of a lecherous professor [4] from whom she took a single course in rhetoric in 1976. She does not assert that her association and alleged sexual relationship caused her to be denied any academic benefit unless she agreed to have a continuing relationship with him. She complains rather that the relationship which in retrospect was "unwelcome" and "violative" but which at all times was consensual, "went sour" after she called defendant Melia at his family residence, but that defendant, though now cold and distant emotionally, still intruded on her life.

For this intrusion, she seeks to hold Pitt responsible.

Defendant Melia is not alleged at any point after 1976 to have had any official role as plaintiff's advisor or teacher. At most, he is alleged to have abandoned a paper that Melia and plaintiff were co-authoring, forcing plaintiff to complete it at some inconvenience to her Christmas vacation.

Melia's work on the paper is not alleged to be in any way related to any duty or office held by him.

Plaintiff, desirous of stating a claim, ignores judicial precedent and blandly blurs fundamental distinctions between Title VII of the Civil Rights Act of 1964, an exercise by Congress of its power under the Commerce Clause to regulate employment conditions, and Title IX of the Education Amendments of 1972, an exercise by Congress under the Spending Clause to eliminate the use of federal funds in certain discriminatory educational programs. See *Guardians Association v. Civil Service Commission*, 463 U.S. 582, 596, 103 S.Ct. 3221, 3229, 77 L.Ed.2d 866 (1983) (opinion of White, J. announcing the judgment of the Court) for the inappropriate nature of a damages remedy.

Plaintiff begins by assuming her conclusions—that what defendant Melia was allegedly guilty of is sexual harassment for which Pitt is responsible, and that sexual harassment, construed as any sexual involvement between a Pitt employee and a student, violates Title IX. Both assumptions are incorrect. Under Title VII, the Equal Employment Opportunity Commission of the Department of Labor, as an exercise of its agency expertise in interpreting and administratively enforcing Title VII, has promulgated, at 29 C.F.R. § 1604.11 guidelines for defining sexual discrimination in employment. Included in the guidelines, upheld as an exercise of agency discretion within the agency's area of expertise in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986), is the "hostile environment" definition of sexual harassment:

---

**3.** This is only a sample of what is submitted by way of legal memorandum. We exhort the trial bar to leave the writing of romantic prose to those who are qualified for it, and remember that nouns and verbs, rather than conclusory adjectives, are the stuff of which clear thought and persuasive argument is made.

**4.** "The Lecherous Professor" is the title of a book co-authored by an expert witness proffered by plaintiff. It is an anecdotal account of the author's research into sexual relationships between male faculty members and female students.

Unwelcome sexual advances ... *and other verbal or physical conduct* of a sexual nature ... constitute sexual harassment when ... (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment. (emphasis added)

29 C.F.R. § 1604.11(a)(3) (1988). Plaintiff, aside from asking the Court to interpret the meaning of "unwelcome" to include "it used to be welcome, but now it's not", is also asking the court to transfer wholesale the EEOC guidelines into an area for which they were not drafted, for enforcement directly by the judiciary without administrative review by the OCR, and in ignorance of Title VI, 42 U.S.C. § 2000d, after which Title IX was patterned, *Cannon v. University of Chicago, supra,* and the procedural provisions of which Title IX adopts. 34 C.F.R. § 106.71.

■ Title IX prevents gender discrimination in a federal program's distribution of benefits. It also clearly reaches what has been defined as *quid pro quo* sexual harassment by a recipient of Federal funds, since without administrative interpretation this clearly violates Title IX by conditioning benefits on the basis of impermissible criteria. But to suggest, as plaintiff must, that unwelcome sexual advances, from *whatever* source, official or unofficial, constitute Title IX violations is a leap into the unknown which, whatever its wisdom, is the duty of Congress or an administrative agency to take. Title IX simply does not permit a "hostile environment" claim as described for the workplace by 29 C.F.R. § 1604.11(a)(3).

■ Plaintiff's assertion that Pitt is liable on the final ground for failing to have a grievance resolution procedure fails to state a claim as well. Since Pitt's duty under Title IX as implemented is to publish its nondiscriminatory policy, 34 C.F.R. § 106.9, and establish an internal procedure to deal with discrimination complaints, 34 C.F.R. § 106.8 "alleging any action which would be prohibited by this part" Id. § 106.8(b), it is not necessary under Title IX for Pitt to set up a grievance procedure to deal with plaintiff's complaints of problems in her private relationship with defendant Melia, which is not action prohibited or regulated by Title IX.

■ Plaintiff further lacks standing to challenge the adequacy of Pitt's gender nondiscrimination policy, since she does not assert any grievance to her that the university had a duty to hear. *Alexander v. Yale University, supra,* 631 F.2d at 185. She utterly fails to proffer any admissible evidence of discrimination, *quid pro quo* harassment, or even of an atmosphere of sexual harassment.

*Civil Rights Claims:*

■ Plaintiff claims that Pitt and the individual defendants violated plaintiff's civil rights under color of state law by failing to restrain defendant Melia from associating with her, and by failing to afford her due process in hearing her grievances against defendant Melia. For purposes of the motion to dismiss the claim brought under 42 U.S.C. § 1983, defendant Pitt can be assumed to be acting under color of state law, *Krynicky v. University of Pittsburgh,* 742 F.2d 94 (3d Cir.1984) *cert. denied* 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985), and the individual defendants can be held liable if they conspire with one acting under color of state law. *Adickes v. Kress & Co.,* 398 U.S. 144, 150–52, 90 S.Ct. 1598, 1604–06, 26 L.Ed.2d 142 (1970). Plaintiff fails to state a claim, however, under either 42 U.S.C. § 1983 or 42 U.S.C. § 1985. First, in addition to the inadequacy of merely alleging a vague conclusion of conspiracy, see *Everett v. City of Chester,* 391 F.Supp. 26 (E.D.Pa.1975) (standards for factual specificity required under 42 U.S.C. § 1985(3)), plaintiff cannot assert Section 1985(3) liability among agents of a single entity, in this case the University of Pittsburgh. *Johnson v. University of Pittsburgh,* 435 F.Supp. 1328, 1370 (W.D.Pa.1977).

■ Plaintiff cannot assert Section 1983 liability on the part of Pitt, and *a fortiori* of the individual defendants unless she can identify a protected constitutional or feder-

al substantive due process right in her right to be free of unwanted sexual advances by defendant Melia, which Pitt violated by not developing procedures to restrain. Despite another invitation to federalize tort law, we decline. The judiciary has to this point limited its expansion of substantive due process rights to those clear situations involving physically abusive conduct towards minor children in public schools, prisoners and state hospital patients. *Deshaney v. Winnebago Co. Department of Social Services*, —— U.S. ——, 109 S.Ct. 998, 1003–04, 103 L.Ed.2d 249 (1989); *Bowers v. DeVito*, 686 F.2d 616 (7th Cir.1982); Cf. *Stoneking v. Bradford Area School District*, 667 F.Supp. 1088 (W.D.Pa. 1987) aff'd 856 F.2d 594 (3d Cir.1988) vacated and remanded —— U.S. ——, 109 S.Ct. 1333, 103 L.Ed.2d 804 (1989).

Plaintiff also asserts that Title IX provides an independent basis for finding that Pitt violated Section 1983. Although we have held to the contrary, assuming that plaintiff had presented evidence that Pitt violated Title IX, plaintiff still would have no cause of action under Section 1983. Section 1983 is no more of an invitation to create expanded causes of action based on separate federal statutes than it is to create federal causes of action based on state tort law. A statute, such as Title IX, which contains its own remedies and is implemented through its own procedural scheme, does not permit bypassing what Congress has written by going directly to Section 1983. *Middlesex County Sewerage Authority v. Sea Clammers*, 453 U.S. 1, 20, 101 S.Ct 2615, 2626, 69 L.Ed.2d 435 (1981). See also *Minor v. Northville Public Schools*, 605 F.Supp. 1185 (E.D.Mich. 1985).

*Pendent claims:*

Although plaintiff fails to introduce any evidence of a violation of Title IX or of any other federal law, we note that her state law claims are probably time-barred as well. See 42 Pa.C.S. § 5524 (two year statute of limitations for tort liability). Plaintiff's own account of her relationship and her original *pro se* complaint show a

termination of any acts of sexual harassment well before May of 1984. Plaintiff attempts to keep her claim updated by asserting that, *inter alia*, defendant Melia continued to stare at her in public as recently as 1986, and that this is a continuing course of conduct. Whatever else it may be, it is not actionable harassment of any kind, including sexual harassment.

Plaintiff, finally, without record support, asserts that defendant Melia threatened her life in 1986. Plaintiff's Memorandum, 52. Plaintiff described this event in her deposition as having taken place in 1983. (Bougher deposition, 353). If plaintiff's counsel was merely being careless with his dates, a carelessness which led to a prior Motion to Strike what appeared to be an attempt to evade Judge Standish's order permitting amendment of the complaint, we caution him to proofread his documents more carefully.

An appropriate Order will follow.

## ORDER

AND NOW, this 14th day of March, 1989, consistent with the foregoing memorandum, it is

ORDERED, that summary judgment is granted in favor of defendants, and plaintiff's Second Amended Complaint is dismissed with prejudice. The clerk is directed to mark this file closed.