Johna MENNONE, Plaintiff,

v.

Stephen H. GORDON, Amity Regional
Board of Education, and James
Bouchard, Defendants.

No. 3:92 CV 467 (GLG).

United States District Court,
D. Connecticut.

June 15, 1995.

Greenfield & Murphy, New Haven, CT (Maureen M. Murphy, of counsel), for plaintiff.

Sperandeo & Donegan, New Haven, CT (Ruth Beardsley, of counsel), for defendants Gordon and Bd. of Educ.

Brenner, Saltzman & Wallman, New Haven, CT (David R. Schaefer, of counsel), for defendant Bouchard.

## OPINION

GOETTEL, District Judge.

Plaintiff brings this action for declaratory relief and damages pursuant to 20 U.S.C. § 1681 ("Title IX"), 18 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. Defendants now move to dismiss the Title IX claims against individual defendants Gordon and Bouchard and the constitutional claims against all defendants. For the reasons stated below, Defendants' motion (Docket # 19) is granted with regard to the Title IX claim against Defendant Bouchard and the constitutional claims against all defendants, and is granted without prejudice to repleading within twenty days with respect to the Title IX claim against Defendant Gordon. Plaintiff's request for declaratory relief is moot.

### BACKGROUND

The following facts are based entirely on the allegations in the complaint. Plaintiff, a senior at Amity Regional High School during the 1990–91 school year, was enrolled in an environmental science class taught by Defendant James Bouchard. Early in the semester another student, Scott Randall, began to sexually harass her in class on an almost daily basis. Mr. Randall repeatedly insulted and assaulted Plaintiff, making remarks

about her breasts, grabbing her hair, legs, breasts and buttocks, and threatening to rape her. Although he was present and Plaintiff asked him to intervene at least once, Mr. Bouchard did nothing to stop Mr. Randall's actions.

Mr. Randall resumed the same type of behavior in a law class attended by both students during the spring semester. Some time in May the class was taught by a guest speaker who was a rape crisis counselor. For the first time Plaintiff learned that Mr. Randall's behavior was inappropriate and in some instances criminal.

After several more incidents, and consultation with school guidance counselors, Plaintiff sought direct help from school administrators. She was referred to an outside rape crisis center where counselors advised her that Mr. Randall's behavior was criminal, and encouraged her to file a complaint with the police. The school administration took no action against Mr. Randall.

The problems continued, and Plaintiff ultimately went to the Woodbridge police. Mr. Randall was arrested and charged with sexual assault in the fourth degree and breach of the peace. School administrators did not suspend or significantly discipline Mr. Randall. Plaintiff, who had skipped classes throughout the year to avoid Mr. Randall, barely attended the last few weeks of school.

Although Defendants were aware of these events, they did not take any action or enact any policies or procedures to protect Plaintiff from Mr. Randall's harassment. Plaintiff argues that Defendants' failure to protect her from Mr. Randall was a violation of her rights under Title IX, Section 1983 and the Fourteenth Amendment.

### DISCUSSION

Since this is a motion to dismiss we must accept all of the allegations in the complaint as true, and draw all inferences in favor of the plaintiff. *Andrea Theatres, Inc. v. Theatre Confections, Inc.,* 787 F.2d 59, 64 (2d Cir.1986). We can dismiss under Rule 12(b)(6) only if "it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to

relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). We will consider only the first two counts of the complaint, since Plaintiff has withdrawn the state claims presented in the third and fourth counts.

### I. *Claims Against Superintendent Gordon*

■ Defendants argue that both counts against Superintendent Gordon should be dismissed since the school board is a defendant in the action. Mr. Gordon is named in his official capacity, so the claims against him must be dismissed if the Board is the real party in interest. *Rosa R. v. Connelly,* 889 F.2d 435, 437 (2d Cir.1989), *cert. denied,* 496 U.S. 941, 110 S.Ct. 3225, 110 L.Ed.2d 671 (1990) (citing *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985)). To maintain an action against Mr. Gordon in his official capacity, Plaintiff must allege that he was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

Plaintiff's complaint alleges only that Gordon, as Superintendent, served as chief executive officer of the school board and had responsibility for supervision of the school district. There are no specific allegations that Mr. Gordon was directly and personally responsible for any action or inaction on the part of the school board or teacher Bouchard. Based on the complaint as currently drafted, it appears that the school board is the real party in interest.

Defendants' motion to dismiss the claims against Superintendent Gordon is granted without prejudice to repleading within twenty days.

### II. *Count I—Title IX*

#### A. *Application of Title IX to Individuals*

■ Defendants James Bouchard and Superintendent Stephen Gordon move to dismiss Plaintiff's Title IX claims against them on the grounds that the statute does not

apply to individuals.[1] Since the issue is one of statutory interpretation, we start our analysis with the language of the statute itself. *Samuels, Kramer & Co. v. C.I.R.*, 930 F.2d 975, 979 (2d Cir.1991). The plain meaning of the statute controls our determination, unless the result is clearly at odds with the intent of Congress. *Id.*

Title IX provides that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ...

20 U.S.C. § 1681. The statute then carves out exceptions for certain types of educational institutions and activities. *Id.*

■ The plain language of the statute broadly refers to discrimination occurring "under any education program or activity." This language does not restrict the potential class of defendants based on their nature or identity (i.e. individual, institution, etc.). It does, however, restrict them based on their function or role in a program or activity. Logically, the language of Title IX demands that a defendant must exercise some level of control over the program or activity that the discrimination occurs under. Thus, the plain language of the statute sets forth a functional restriction that does not preclude individual defendants, as long as they exercise a sufficient level of control.

■ Our conclusion is supported by a review of the regulations adopted to implement Title IX. While an administrative agency's interpretation of a statute is not conclusive, it is entitled to deference as long as it is consistent with the language of the statute. *Young v. Community Nutrition Inst.*, 476 U.S. 974, 981–82, 106 S.Ct. 2360, 2364–65, 90 L.Ed.2d 959 (1986). According to the regulations, Title IX was designed to eliminate sex discrimination under any education program or activity receiving Federal financial assistance, "whether or not such program or activity is offered or sponsored by an educational institution...." 34 C.F.R. § 106.1. The regulations go on to define a "recipient" as:

any State or political subdivision thereof, or any instrumentality of a State or political subdivision thereof, any public or private agency, institution, or organization, or other entity, *or any person, to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives or benefits from such assistance, including any subunit, successor, assignee, or transferee thereof.*

*Id.* § 106.2 (emphasis supplied).

This definition clearly includes persons or entities that do not receive funding directly from the federal government. Further, it expresses the functional requirement we have described above by restricting the definition of recipients to persons who "operate" a program or activity. Such a restriction properly exposes those who have the power to prevent discrimination to liability, while shielding individuals who do not exercise such control. This is completely consistent with Title IX, excluding potential defendants only as contemplated by specific language in the statute.

In *Chaplin v. Consolidated Edison*, 587 F.Supp. 519 (S.D.N.Y.1984), the court faced a similar question regarding individual defendants under § 504 of the Rehabilitation Act. 29 U.S.C. § 794. The court found that "§ 504 and the accompanying regulations can be read as requiring a showing that the discrimination took place under a federally funded program, but as permitting a suit against individuals responsible for discriminatory policies as well as against the entity receiving federal funds." *Id.* at 521. The court specifically considered the definition of a "recipient" in regulations enacted pursuant to § 504, and held that the statute extends liability to agents of an entity that receives federal funding.[2] *Id.* at 520–21. This is

---

1. Since we have just dismissed both claims against Mr. Gordon, we will only refer to Mr. Bouchard in the remainder of this section.

2. Recipient under § 504 is defined as:

any State or its political subdivisions, any instrumentality of a State or its political subdivisions, any public or private agency, institution, organization, or other entity, or any person to

another way of expressing what we have referred to as control over the program or activity.

The language of § 504 closely parallels Title IX, and the regulations for each statute define "recipient" to include individuals who exercise sufficient control over the program or activity. *Compare* 34 C.F.R. § 106.2 and 45 C.F.R. § 86.2 (Title IX) *with* 29 C.F.R. § 32.3 (Section 504). As with § 504, the regulations adopted under Title IX define a "recipient" of funding broadly enough to encompass individuals who act as agents for entities that receive federal funds and exercise control over the program or activity in question. *See Chaplin,* 587 F.Supp. at 520–21.

Defendants argue that several courts have interpreted Title IX to apply only to educational institutions. Of the cases cited by Defendants, only *Franklin v. Gwinnett County Public Schools,* 911 F.2d 617 (11th Cir.1990) was decided by a court of appeals. In dicta, the *Franklin* court noted that "the Sixth Circuit has found there is no right to proceed against an individual under Title IX. *See, e.g., Leake v. Univ. of Cincinnati,* 605 F.2d 255, 259–60 (6th Cir.1979)." *Franklin,* 911 F.2d at 622 n. 9.

Although the language of *Leake* is somewhat confusing, careful review reveals that the Sixth Circuit did not even address this issue. *See Leake,* 605 F.2d at 259–60 (holding that an employee of an educational institution has no private right of action for sex discrimination under Title IX against the educational institution). Thus it appears that no court of appeals has confronted this particular question.

Defendant also relies on several district court cases. Three of these cases offer no analysis of the statute, simply concluding either that the individuals received no funding or that Title IX only applies to institutions. *See Aurelia D. v. Monroe County Bd. of Educ.,* 862 F.Supp. 363, 367 (M.D.Ga.1994) (holding that "only federally-funded institutions can be held liable" under Title IX); *Bougher v. Univ. of Pittsburgh,* 713 F.Supp.

139, 143 (W.D.Pa.1989) (dismissing claims against individuals based on finding that they did not receive funds); *Bagley v. Hoopes,* Civ. A. No. 81–1126–Z, 1985 WL 17643 at *5 (D.Mass. Aug. 6, 1985) (dismissing claims against administrators because "they are not 'educational institutions' "). Another case, *Moire v. Temple Univ. School of Medicine,* 613 F.Supp. 1360, 1366 (E.D.Pa.1985), *aff'd without op.,* 800 F.2d 1136 (3d Cir.1986), is inapposite because the individual defendant in the case did not even work for the university. The Title IX claim against him was properly dismissed because he worked for an independent psychiatric clinic that did not receive federal funds.

The only district court case that carefully considers the question is *Doe v. Petaluma City School District,* 830 F.Supp. 1560, 1576–77 (N.D.Cal.1993). *Doe* offers a thoughtful analysis of the statute, but we believe the court's reliance on analogy to Title VII, 42 U.S.C. §§ 2000e—2000e–17, is inappropriate. *Doe,* 830 F.Supp. at 1577. While Title VII provides appropriate substantive principles to use in Title IX employment discrimination cases, *see Preston v. Commonwealth of Virginia ex rel. New River Community College,* 31 F.3d 203, 206 (4th Cir.1994), there are major differences in the two statutes.

Unlike Title IX, Title VII is written as a blanket prohibition against a variety of "unlawful employment practices" without regard to federal funding. There is no language qualifying the class of potential defendants under Title VII. In contrast, Title IX limits the group of potential defendants by linking the prohibition to receipt of federal funding. Although both statutes attack the same type of problems, they are structured so differently that Title VII is not an appropriate reference for determining the proper defendants in a Title IX action.

■ Ultimately we are unconvinced by these decisions. The plain language of Title IX does not reveal any indication that Congress intended to exclude individuals as potential defendants. Since Mr. Bouchard was

which Federal financial assistance is extended directly or through another recipient, including any successor, assignee, or transferee of a

recipient, but excluding the ultimate beneficiary of the assistance.
29 C.F.R. § 32.3.

the school authority in control of the classroom at the time of at least some of the alleged violations, he is a proper defendant under Title IX. Defendant Bouchard's motion to dismiss the Title IX claims is denied.

### B. *Qualified Immunity*

■ Defendants have also raised the defense of qualified immunity. The doctrine of qualified immunity shields government officials from liability for civil damages arising from actions that do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This is an objective test, focusing on a determination of whether the rights in question were clearly established at the time the action occurred and whether it was reasonable for the Defendants to believe that their acts did not violate those rights. *Id.; see also Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987). In establishing this standard, the Supreme Court recognized that "resolution of immunity questions inherently requires a balance between the evils inevitable in any available alternative." *Harlow,* 457 U.S. at 813, 102 S.Ct. at 2736.

A statutory or constitutional right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The complaint states that:

> By forcing plaintiff to attend classes in an environment in which she as [sic] sexually harassed and failing to offer and publish procedures and mechanisms for addressing sexual harassment, the defendants have excluded plaintiff from participation in and denied plaintiff the benefits of an education and subjected the plaintiff to discrimination on the basis of her sex in violation of 20 U.S.C. Section 1681 and 45 C.F.R. Sections 86.8, 86.31 and 86.34.

Complaint at 10. Assuming the truth of Plaintiff's allegations, we must determine whether Mr. Bouchard's conduct violated Plaintiff's clearly established rights under Title IX.

■ Plaintiff's allegations against Mr. Bouchard relate to his knowledge of Mr. Randall's sexual harassment and his failure to protect her from those acts. Plaintiff argues that Mr. Bouchard had a clearly established duty to protect. However, the cases Plaintiff cites regarding a duty to protect involve abuse or harassment by a teacher rather than student-to-student harassment as we have here. *See, e.g., Jefferson v. Ysleta Independent School Dist.,* 817 F.2d 303 (5th Cir.1987) (denying qualified immunity where teacher tied student to a chair for an entire school day).

To account for this, Plaintiff argues that qualified immunity does not demand that prior cases be precisely on point in order to find clearly established law. *See Stoneking v. Bradford Area School District,* 882 F.2d 720, 730 (3d Cir.1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990). Yet this is not a case where prior cases logically lead to the right asserted by Plaintiff. The extension of liability for failure to protect against student-to-student behavior does not clearly flow from prior sexual harassment and duty to protect cases. Further, attempts to extend constitutional protections to such cases have been controversial and consistently unsuccessful. *See, e.g., Walton v. Alexander,* 44 F.3d 1297 (5th Cir.1995); *Graham v. Independent School District No. I–89,* 22 F.3d 991 (10th Cir.1994); *Dorothy J. v. Little Rock School District,* 7 F.3d 729 (8th Cir.1993).

Although Mr. Bouchard's alleged failure protect Plaintiff is very troubling, it did not violate a clearly established constitutional or statutory right. Defendant Bouchard is entitled to qualified immunity from Plaintiff's Title IX claim.

### III. *Count II—Fourteenth Amendment*

■ Defendants argue that Plaintiff cannot bring constitutional claims based on the same factual allegations as her Title IX claims. In *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the Supreme Court held that "[w]hen the

remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Id.* at 20, 101 S.Ct. at 2626. The Third Circuit has held that constitutional claims grounded on the same underlying facts as a Title IX claim are "subsumed" within the Title IX claim. *Williams v. School Dist. of Bethlehem,* 998 F.2d 168, 176 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 689, 126 L.Ed.2d 656 (1994); *Pfeiffer v. School Bd. for Marion Ctr. Area,* 917 F.2d 779, 789 (3d Cir.1990). Applying the *Sea Clammers* test, the Court of Appeals found that Title IX establishes a "comprehensive enforcement scheme" that cannot be bypassed by bringing an action under § 1983. *Pfeiffer,* 917 F.2d at 789. District courts that have considered this issue have reached the same conclusion. *See Bougher v. University of Pittsburgh,* 713 F.Supp. 139, 145 (W.D.Pa.), *aff'd on other grounds,* 882 F.2d 74 (3d Cir.1989); *Mabry v. State Board for Community Colleges,* 597 F.Supp. 1235, 1239 (D.Colo.1984), *aff'd on other grounds,* 813 F.2d 311 (10th Cir.1987).

Plaintiff makes no effort to show that the enforcement scheme under Title IX is not "comprehensive." Instead, Plaintiff first relies on several Rehabilitation Act cases. Although the Rehabilitation Act is similar in many respects to Title IX, there is no need to analogize here since we can directly consider the scope of remedies provided by Title IX. Next, Plaintiff looks to two cases where courts considered both Title IX claims and constitutional claims brought under § 1983. *See Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881 (1st Cir.1988); *Kelley v. Board of Trustees of Univ. of Illinois,* 832 F.Supp. 237 (C.D.Ill.1993), *aff'd,* 35 F.3d 265 (7th Cir. 1994). However, at oral argument Plaintiff agreed that the *Sea Clammers* analysis controls our determination on this issue. Neither of these cases even considered the *Sea Clammers* question, so they do little to inform our decision.

Since there is no Second Circuit authority on this issue, we will apply the *Sea Clam-*

*mers* test to Title IX directly. In order for Plaintiff's constitutional claims to be subsumed by Title IX, we must find by "express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement" through § 1983. *Wright v. Roanoke Redevelopment & Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). "We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy" for the deprivation of constitutional rights. *Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984), *cited in Wright,* 479 U.S. at 423–24, 107 S.Ct. at 770–71.

Title IX establishes an administrative remedy that is initiated by filing a complaint with the Department of Education, which must promptly investigate the allegations. 34 C.F.R. § 100.7.[3] The complainant has a right to petition to be an amicus curiae at any administrative hearing on the complaint. 34 C.F.R. § 101.23. Absent a complaint, the statute gives the government authority to investigate possible violations and impose sanctions including the elimination or denial of federal funding. 34 C.F.R. §§ 100.7 and 100.8.

■ The availability of a private right of action is significant evidence of congressional intent to supplant the § 1983 remedy. *Wright,* 479 U.S. at 427, 107 S.Ct. at 772. In addition to the administrative enforcement scheme described above, there is a private right of action under Title IX, *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). A private plaintiff can seek a variety of remedies, including equitable relief and compensatory damages for intentional violations of the statute, *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), and reasonable attorney's fees under 42 U.S.C. § 1988.

■ We conclude that Title IX has a sufficiently comprehensive enforcement scheme to demonstrate that Congress intend-

---

**3.** The procedural provisions applicable to Title VI have been adopted for handling complaints under Title IX. 34 C.F.R. § 106.71.

**60**

ed to foreclose enforcement through § 1983.[4] Since Plaintiff's constitutional claims are foreclosed, we need not address the variety of issues presented by these claims.

IV. *Declaratory Judgment*

 Defendants argue that Plaintiff's request for a declaratory judgment is moot. A claim for declaratory judgment is moot if the relief requested would no longer have an effect on legal relations between the parties. *De Funis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). The Second Circuit has stated that similar claims for relief under Title IX "appear moot" due to the plaintiffs' graduation. *Alexander v. Yale University,* 631 F.2d 178, 184 (2d Cir.1980).

 Plaintiff argues that her claims are within an exception to the mootness doctrine because they are "capable of repetition, yet evading review." *Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). According to Plaintiff, the school district offers adult education which she may attend at some time in the future. The uncertain possibility that Plaintiff may attend classes in the future is insufficient to invoke this exception to the mootness doctrine.

We find Plaintiff's claim for declaratory relief moot.

### CONCLUSION

Based on the foregoing, Defendant's motion to dismiss (Docket # 19) is granted with regard to the Title IX claim against Defendant Bouchard and the constitutional claims against all defendants, and is granted without prejudice to repleading within twenty days with respect to the Title IX claim against Defendant Gordon. Plaintiff's request for declaratory relief is moot.

**SO ORDERED.**

---

4. Plaintiff makes a brief effort to limit the § 1983 preclusion to her equal protection claim, arguing that her due process claim should still go forward. There is no basis for differentiating Plaintiff's constitutional claims here, since they both are based on the same facts. We express no opinion as to whether an independent due process claim brought under § 1983 would be allowed if it was grounded on a different set of underlying facts. *See Smith v. Robinson,* 468 U.S. 992, 1014 n. 17, 104 S.Ct. 3457, 3469 n. 17, 82 L.Ed.2d 746 (1984).