**Michael W. TURNER, Plaintiff,**

v.

**FIRST HOSPITAL CORPORATION OF NORFOLK, Defendant.**

**Civ. A. No. 91–254–N.**

United States District Court, E.D. Virginia, Norfolk Division.

Aug. 14, 1991.

---

Reid H. Ervin, Craig L. Mytelka, Norfolk, Va., for plaintiff.

Laura B. Hernandez, Michael W. Smith, Richmond, Va., for defendant.

## ORDER

MacKENZIE, District Judge.

By order of June 10, 1991, the above action was referred to Magistrate Judge William T. Prince to conduct necessary hearings and submit to a judge of this Court proposed findings of fact and recommendations for the disposition of defendant's motion to dismiss and motion to strike jury award, which motion had been filed herein on May 14th. On July 19th, the said Magistrate Judge filed his Report and Recommendation. The report and proceedings show that briefs were filed by counsel for each of the parties and a hearing held at which counsel for each party appeared; that the Clerk was directed to mail copies of the report to counsel for each party by which they were notified that written objections to the Report and Recommendation should be filed with the Clerk within ten (10) days from the date of the mailing of the Report and Recommendation, such time to be computed as provided for by Rule 6(a), plus three (3) days permitted by Rule 6(e) of the Federal Rules of Civil Procedure; that failure to file timely objections would result in a waiver of a right to appeal from a judgment of this Court based on such recommendations; and that a judge of the District Court would make a *de novo* determination of those portions of the Report and Recommendation to which objections were made.

And it appearing from the record that on July 22nd, a copy of said Report and Recommendation was duly mailed by the Clerk to counsel for the parties and that more than twenty (20) days have elapsed and no objections have been filed by either party, the aforesaid Report and Recommendation are accepted and adopted as the opinion of the Court and made firm and binding on the parties to this cause. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Camby v. David,* 718 F.2d 198 (1983); *United States v. Schonce,* 727 F.2d 91 (4th Cir.1984), 80 ALR Fed 913, *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352; *Praylow v. Martin,* 761 F.2d 179 (4th Cir.1985), *cert. denied,* 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 466.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

WILLIAM T. PRINCE, United States Magistrate Judge.

### *Order of Designation*

United States District Judge John A. MacKenzie, by an order entered June 10, 1991, designated the undersigned magistrate judge to conduct a hearing and to submit to a judge of the Court proposed recommendations for disposition by the judge of defendant's Motion to Dismiss and Motion to Strike Jury Demand.

A hearing was held on March 7, 1991 at which Reid H. Ervin, Esquire, and Craig L. Mytelka, Esquire, appeared for plaintiff, while Laura B. Hernandez, Esquire, and Michael W. Smith, Esquire, appeared for defendant.

## NATURE OF THE CASE

### *Procedural Background*

On April 22, 1991, plaintiff, Michael W. Turner ("Turner"), filed a complaint under

§ 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982), and Title VI of the Civil Rights Act of 1964, § 601 *et seq.*, 42 U.S.C. § 2000d *et seq.* (1982), for wrongful termination of his employment. He contends that jurisdiction is proper under 28 U.S.C. §§ 1331, 1343, and 2201. Plaintiff seeks economic and non-economic benefits including loss of earnings, loss of health and disability insurance benefits, loss of his employment, mental anguish, humiliation, embarrassment, and pain and suffering. On May 14, 1991, defendant filed a Motion to Strike Jury Demand as well as a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) attempting to dismiss plaintiff's claims for compensatory and punitive damages.

### Factual Background

Norfolk Psychiatric Center ("NPC") hired Turner as a mental health worker on March 14, 1988. In July 1988, he was transferred to the position of Chemical Dependency Worker, the position he held at the time of the acts which are the subject of this suit. Subsequently, NPC reassigned Turner for training and work as a Day Treatment Counselor in the Chemical Dependency Unit.

On July 1, 1990, he was diagnosed as having multiple sclerosis. As a result, the defendant placed Turner in a light duty status for several weeks. He returned to full duty status on September 27, 1990, and plaintiff alleges that he sufficiently performed his duties as a Chemical Dependency Worker and Day Treatment Counselor Trainee. NPC terminated Turner's employment on October 4, 1990, and NPC advised him by letter that his termination was due to the limitations placed upon him by his multiple sclerosis, his failure to fulfill the duties of his jobs, and through no fault of his own.

### Issue Presented

The issue for resolution is whether compensatory and/or punitive damages are available under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title VI of the Civil Rights Act of 1964, § 601 *et seq.*, 42 U.S.C. § 2000d *et seq.*

### DISCUSSION

In *Eastman v. Virginia Polytechnic Institute and State University,* 939 F.2d 204 (4th Cir.1991) the Fourth Circuit squarely addressed the availability of compensatory and punitive relief under § 504 of the Rehabilitation Act. In *Eastman,* the plaintiff was employed by Virginia Polytechnic Institute and State University ("VPI") in various capacities from 1978 to 1989. She suffered from various handicaps that affected her ability to perform even simple movements. Eventually, she was transferred to a new position at VPI; however, she alleged that VPI failed to assist in her relocation thus causing her pain and suffering as well as a deterioration of her physical condition. She filed a claim under § 504 of the Rehabilitation Act of 1973 seeking declaratory relief, compensatory damages, punitive damages, costs, and attorney's fees. Plaintiff made no claim for equitable relief such as reinstatement and back pay.[1]

The court specifically ruled that compensatory and punitive relief were unavailable under § 504 of the Rehabilitation Act. With regard to compensatory damages, the Fourth Circuit analogized Title VI and § 504 to Title VII of the Civil Rights Act of 1964, § 701 *et seq.*, 42 U.S.C. § 2000e *et seq. Id.* at 208. The court indicated that:

> Title VII (42 U.S.C. § 2000e *et seq.*) is a useful guidepost for Title VI analysis. *Guardian's* [*Ass'n v. Civil Service Comm'n of the City of New York,*] 463 U.S. [582], 634, 103 S.Ct. [3221] 3249, [77 L.Ed.2d 866] (Marshall, J., dissenting). Both were original components of the

---

**1.** The court agreed with the Supreme Court's decision in *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 630, 104 S.Ct. 1248, 1252, 79 L.Ed.2d 568 (1984), that equitable relief in the form of back pay is awardable where the plaintiff proves intentional discrimination. *East-*

*man,* 939 F.2d at 206. The *Eastman* court further held that the equitable remedies of injunctive and declaratory relief and reinstatement were also available. *Id.* (citing *Drayden v. Needville Indep. School Dist.,* 642 F.2d 129, 132–33 (5th Cir.1981)).

Civil Rights Act of 1964. Pub.L. 88–352, 78 Stat. 253 (1964). Title VII has consistently been limited to allow only equitable relief such as reinstatement, back pay, and injunctions against further violations." *See Glezos v. Amalfi Ristorante Italiano, Inc.*, 651 F.Supp. 1271 (D.Md. 1987) (compensatory or punitive damages not available under Title VII; *see generally* Annotation, *Award of Compensatory Damages, Aside from Backpay or Frontpay, for Violation of Title VII of Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.)*, 48 A.L.R.Fed. 338 (1980). The scope of Title VI extends beyond the employment arena, but this fact does not dilute the persuasive force of the Title VII/Title VI analogy. Both statutory schemes provide weapons against discriminatory practices, and the differences between the two do not argue for distinct approaches to damages. The considerable overlap of the two, e.g., racial discrimination claims against a federally-funded employer, militates in favor of a basic congruity of remedies. Nothing in the legislative history of Title VI points to any reason why the anti-discrimination statutes should not be treated similarly in this regard.

By the explicit statutory mandate of 29 U.S.C. § 794a(a)(2), § 504 should be similarly circumscribed.

*Eastman*, 939 F.2d at 208;[2] *cf. Cortes v. Board of Governors*, 766 F.Supp. 623, 625. (N.D.Ill.1991) (criticizing approach to analogize Title VII and § 504 because "Title VII, unlike § 504, specifically defines what relief is available under the statute, and refers only to equitable relief").

The Fourth Circuit finally determined that Congress did not intend a broad damage remedy for § 504 violations when it amended the Act in 1978 to prescribe that the remedies available under Title VI were the appropriate remedies under § 504.[3] *Eastman*, 939 F.2d at 208–209. Instead, the court held that Congress passed the 1978 amendment with knowledge of the "judicial track record" of Title VI cases (i.e., only one reported case between 1964 and 1978 allowed compensatory relief for a Title VI violation). *Id.* at 209. Accordingly, the Fourth Circuit concluded that "Congress intended no radical expansion of available relief" for Title VI violations and, correspondingly, § 504 of the Rehabilitation Act does not afford an award of compensatory relief for pain and suffering.

---

**2.** Other courts denying compensatory damages have relied on the significance of Title VI, Title IX, or § 504 as Spending Clause legislation. *See, e.g., Franklin v. Gwinnett County Public Schools*, 911 F.2d 617, 622 (11th Cir.1990), *cert. granted*, —— U.S. ——, 111 S.Ct. 2795, 115 L.Ed.2d 969 (1991); *Lieberman v. Univ. of Chicago*, 660 F.2d 1185, 1187 (7th Cir.1981) (citing *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981)). In *Pennhurst,* the Supreme Court limited the remedies available for violations of legislation passed by Congress pursuant to the Spending Clause. The Court observed that "the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Pennhurst,* 451 U.S. at 28, 101 S.Ct. at 1545. The special nature of Spending Clause legislation limits the general rule that a court may utilize any available remedy to afford full relief for a wrong. *See Franklin,* 911 F.2d at 621–22 (citing *Guardians Ass'n v. Civil Service Comm'n of the City of New York*, 463 U.S. 582, 596–97, 103 S.Ct. 3221, 3229–30, 77 L.Ed.2d 866 (1983) (White, J., plurality)). In other words, this line of cases hold that the administrative remedy of cessation of federal funds is a sufficient remedy under Title VI, Title IX, or § 504 of the Act given the overriding significance of the legislation as Spending Clause legislation. Under a Spending Clause analysis, the granting of broad equitable remedies including reinstatement and back pay, lost benefits, declaratory relief, and injunctive relief—as opposed to traditional compensatory damages—operates as the most effective balance between the individual's interest in being made whole and the *Pennhurst* presumption limiting remedies for Spending Clause legislation. Similarly, punitive damages are inappropriate under a Spending Clause approach because the most appropriate form of punishment to a discriminating employer is the termination of its federal funding and not an award of punitive relief to a private litigant. *See Pennhurst,* 451 U.S. at 28, 101 S.Ct. at 1545.

**3.** Section 505(a)(2) of the Act, 29 U.S.C. § 794a(a)(2) (1982), provides: "The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title."

*Id.* at 209.[4] In addition, the court explicitly held that punitive damages are not recoverable for a § 504 violation. *Id.* at 209. Therefore, with regard to plaintiff's specific claims for relief, the Court determines that plaintiff may only recover equitable remedies including reinstatement and back pay as well as the loss of health and disability insurance benefits. Plaintiff may not recover any compensatory damages for his mental anguish, humiliation, embarrassment, and pain and suffering[5] nor any punitive damages.

In *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), the Supreme Court held that a plaintiff is only entitled to a jury trial if some or all of the relief he seeks is legal in nature. Given the Court's determination that compensatory damages are not recoverable, plaintiff is only entitled to equitable relief and, therefore, he has no right to a jury trial.[6] *Id.* at 417–18, 107 S.Ct. at 1835–36.

## RECOMMENDATION

It is recommended that defendant's Motion to Dismiss be GRANTED with regard to plaintiff's claim for compensatory and punitive damages because such relief is unavailable under the Rehabilitation Act of 1973. It is also recommended that defendant's Motion to Strike Jury Demand be GRANTED.

## DIRECTIONS FOR MAILING AND REVIEW PROCEDURES

The clerk shall mail copies of this Report and Recommendation to counsel of record for the parties. By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing recommendations within ten (10) days from the date of mailing of this report to the objecting party (*see* 28 U.S.C. § 636(b)(1)(C)), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.

2. A district judge shall make a *de novo* determination of those portions of this report or specific recommendation to which objection is made.

The parties are further notified that failure to file timely objections to the recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such recommendations. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins,* 766 F.2d 841, 846 (4th Cir.1985) (quoting *Carr v. Hutto,* 737 F.2d 433, 434 (4th Cir.1984)), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 567, 88 L.Ed.2d 552 (1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

---

**4.** The *Eastman* court directly rejected plaintiff's position in this matter that a court should utilize any appropriate remedy to correct a wrong. *See Eastman,* 939 F.2d at 207–209.

**5.** The Fourth Circuit's reasoning in *Eastman* regarding damages for pain and suffering applies equally to plaintiff's compensatory claims for mental anguish, humiliation, and embarrassment.

**6.** Plaintiff concedes that if he has no claim for compensatory or punitive damages then he has no right to a jury trial.