**Judy JUSTICE, Plaintiff–Appellant,**

v.

**PENDLETON PLACE APARTMENTS, et al., Defendants–Appellees.**

**No. 93–5640.**

United States Court of Appeals, Sixth Circuit.

Argued April 28, 1994.

Decided Nov. 17, 1994.

Wanda Turner Lee (argued and briefed), Memphis, TN, for plaintiff-appellant.

Robert L. Moore (argued and briefed), Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, TN, for defendants-appellees.

Before: MERRITT, Chief Judge; and MILBURN and SILER, Circuit Judges.

MERRITT, Chief Judge.

The basic question certified to us on appeal by the district court is whether the handicap discrimination provisions of the Fair Housing Act and the Rehabilitation Act permit recovery of damages for personal injury, but the question is presented in a round-about way through the district court's handling of plaintiff's state law negligence *per se* claim.

Plaintiff brought suit for handicap discrimination on three legal theories, two federal and one state, against owners and managers of her federally-subsidized apartment complex for refusing to transfer her to a downstairs apartment. She sues for violation of the Fair Housing Act and the Rehabilitation Act [1] and also presents a pendent state law theory of negligence *per se* which uses these two federal laws as the source of the state standard of liability.[2] She seeks damages for

---

**1.** The Fair Housing Amendments Act provides that:

> it shall be unlawful—
> To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap....

42 U.S.C. § 3604(f)(1). The Rehabilitation Act provides in part:

> No otherwise qualified individual with a disability in the United States, ... shall, solely by

reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance....

29 U.S.C. § 794.

**2.** Both Acts require reasonable accommodations for the handicapped. 42 U.S.C. § 3604(f)(3)(b) ("discrimination includes ... a refusal to make reasonable accommodations in rules, policies,

injuries she received after falling down the stairs in her building.

In an unusual decision, the district court dismissed plaintiff's negligence *per se* claim based on the violation of the standard of conduct created by the Fair Housing and Rehabilitation Acts and certified its order as final pursuant to Fed.R.Civ.P. 54(b).[3] The district court assumed without discussion that Tennessee negligence law would incorporate the two federal statutes under the negligence *per se* doctrine but reasoned that the Fair Housing and Rehabilitation Acts do not allow recovery of damages for physical injury and then held that recovery of damages for personal injury under the negligence *per se* theory must fail because it is dependent on the remedies available under the two Acts. But the court denied defendants' summary judgment motions as to the substantive Fair Housing and Rehabilitation Act claims (Counts I and II) and granted a motion to stay the trial pending this appeal. Thus, this appeal requests an advisory opinion. It is an appeal of a purely state law question being used to determine whether damages for physical injury are allowed under the Fair Housing Act and the Rehabilitation Act, a federal question of first impression.

## I.

■ Though not raised by the parties, a substantial question exists about the propriety of using Rule 54(b) to present this issue to the Court. "[B]ecause it involves the scope of our appellate jurisdiction, we are compelled to raise *sua sponte* the issue of whether the district court's entry of final judgment was warranted." *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1336 (4th Cir.1993). The "decision to certify a claim for immediate appeal under Rule 54(b) merits substantial deference," *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 61 (6th Cir.1986), and we review the district court's ruling for an abuse of discretion. *Braswell*, 2 F.3d at 1336.

■ Several factors have emerged from case law to determine whether an order is properly certifiable as a final order. *See* 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2659 (1983) ("Wright & Miller"); *Corrosioneering, Inc. v. Thyssen Environmental Systems, Inc.*, 807 F.2d 1279, 1283 (6th Cir.1986); *Solomon*, 782 F.2d at 61 n. 2. First is the relationship between the adjudicated and unadjudicated claims—they should generally be separate and independent so that the appellate court will not have to consider the same issues again if a second appeal is brought. Wright & Miller § 2659. Similarly, a court of appeals should not entertain appeals on issues that are still before the trial court "because questions the appellate court might want to consider have not been adjudicated at the trial level." *Id.* This is true both because of the need for a fully-developed record and because future proceedings in the district court might moot the issues. Another "requirement" under Rule 54(b) is that the district court articulate its reasons for certifying a final order. *Solomon*, 782 F.2d at 61 (failure to provide grounds for certification an abuse of discretion). The court must "weigh and examine the competing factors ... [and] do more than just recite the 54(b) formula of 'no just reason for delay.'" *Id.* The district court below merely concludes that the relevant factors are met with little discussion.

Perhaps more importantly, the only substantive point made by the district court, that a decision "may provide guidance to the court in determining the damages available to plaintiff ... with respect to her statutory claims," actually militates against appellate review in this case. Specifically, the district

---

practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling") (Fair Housing Amendments Act); 24 C.F.R. § 8.33 ("A recipient [of federal funds] shall modify its housing policies and practices to ensure that these policies and practices do not discriminate ... on the basis of handicap") (HUD regulations enacted pursuant to Rehabilitation Act).

3. Rule 54(b) provides that "the court may direct the entry of a final judgment as to one or more but fewer than all the claims ... upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

court dismissed plaintiff's negligence *per se* claim

> because it concluded that the purpose of the Fair Housing and Rehabilitation Acts was to compensate plaintiffs for discrimination not physical injury. In reaching that conclusion, the court looked to the type of damages available under each Act. Because the Sixth Circuit may conclude that the court erred with respect to the type of damages available under each Act, review of the negligence *per se* claim could affect resolution of plaintiff's statutory claims, at least with respect to the issue of damages. This relationship between the negligence *per se* claim and the statutory claims weighs in favor of certification.

Joint Appendix at 237. We disagree.

The negligence *per se* claim depends entirely on the remaining federal claims and the district court's decision was based on its interpretation of what damages are recoverable under the Acts. We are unable to decide this appeal without reference to the Rehabilitation and Fair Housing Acts, but doing so violates most if not all of the Rule 54(b) factors set forth above. The district court's own words indicate that the claims are not "separate and independent" but instead are "inextricably intertwined." *Ginett v. Computer Task Group, Inc.,* 962 F.2d 1085, 1096 (2d Cir.1992) ("those claims 'inherently inseparable' from or 'inextricably interrelated' to each other are inappropriate for Rule 54(b) certification"). The district court still must rule on the availability of damages for the remaining substantive counts so that it is possible (and even likely) that this issue will come up again before another panel after the rest of this case is decided. Furthermore, subsequent events in the district court could conceivably moot the issues in the instant appeal. If the trier of fact decides that plaintiff was not handicapped, no damages issue would remain and any decision rendered here would become an advisory opinion. *Ginett,* 962 F.2d at 1095. Judicial economy generally is served best when appeals are presented in a unified package. Here, the "similarity of legal or factual issues ... weigh[s] heavily against entry of judgment"

under Rule 54(b). *Solomon,* 782 F.2d at 62 (citations omitted).

## II.

A brief analysis of the issues presented further demonstrates why this appeal should not be heard. As has been noted, the thrust of the district court's decision is that damages are unavailable under the Fair Housing and Rehabilitation Acts. Yet the district court made this holding in the context of plaintiff's negligence *per se* claim while hardly discussing the complicated area of damages and remedies under federal law.

We make no effort to decide the issue but simply point out that the district court's summary judgment order never analyzes the most recent Supreme Court case on the issue of damages under federal statutes, *Franklin v. Gwinnett County Public Schools,* —— U.S. ——, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). *Gwinnett* held that monetary damages are available under Title IX of the Education Amendments of 1972. Its language and reasoning, however, may apply with equal force to other federal statutes:

> The general rule, therefore, is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute.

*Id.* at ——, 112 S.Ct. at 1035.

*Gwinnett* seems to clarify the analysis courts must utilize to determine what remedies are available under federal statutes. "[A]bsent any contrary indication in the text or history of the statute, ... the traditional presumption in favor of any appropriate relief for violation of a federal right" will apply. *Id.* at ——, 112 S.Ct. at 1036. Before *Gwinnett* some courts interpreting the Rehabilitation Act had required plaintiffs to demonstrate that Congress intended monetary damages and had found that there "is scant evidence of a legislative intent to authorize all sorts of monetary damages in discrimination cases." *Eastman v. Virginia Polytechnic Inst. & State University,* 939 F.2d 204, 207 n. 4 (4th Cir.1991). It may be that *Eastman* and other courts were asking the

wrong question. *Gwinnett* suggests that all appropriate damages be presumed "absent clear direction to the contrary by Congress," *Gwinnett,* —— U.S. at ——, 112 S.Ct. at 1035, and the burden is on the defendant to demonstrate that Congress did not intend such relief. The apparent switch of the burden from the plaintiff to the defendant limits the applicability of the pre-*Gwinnett* cases which disallowed such damages. *Pandazides v. Virginia Board of Education,* 13 F.3d 823, 830–32 (4th Cir.1994). Recently, some courts interpreting *Gwinnett* have found that compensatory damages are available under the Rehabilitation Act. *Kraft v. Memorial Medical Center,* 807 F.Supp. 785 (S.D.Ga.1992); *Ali v. City of Clearwater,* 807 F.Supp. 701 (M.D.Fla.1992); *Doe v. District of Columbia,* 796 F.Supp. 559 (D.D.C.1992); *Tanberg v. Weld County Sheriff,* 787 F.Supp. 970 (D.Colo.1992). Accordingly, the district court must look to the text and history of the Fair Housing Act and the Rehabilitation Act to determine whether the presumption of "any appropriate damages" applies or whether Congress has clearly restricted the types of damages available.[4]

In addition, the district court treated the Fair Housing and Rehabilitation Acts identically with little discussion about the similarities and differences between them.[5] As not-

ed above, both Acts require that reasonable accommodations be made for the handicapped. The legislative history of the Fair Housing Amendments Act even indicates that "handicap ... be interpreted consistent with ... Section 504 of the Rehabilitation Act." H.R. 100–711, 1988 U.S.C.C.A.N. 2173, 2183. These similarities notwithstanding, the development of damages remedies has taken different paths.

The statutory scheme of the Fair Housing Act provides for a cause of action and a damages remedy. 42 U.S.C. § 3613(c) ("the court may award to the plaintiff actual and punitive damages"). The damages issue under the Rehabilitation Act is more complex because Congress has mandated that the remedies under Title VI be applied, but courts have disagreed about the scope of available damages under Title VI. *Miener v. Missouri,* 673 F.2d 969, 978 n. 9 (8th Cir.), *cert. denied,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982) ("judicial thought as to damages under ... Title VI is divided"). Consequently, courts are divided about the scope of available damages under the Rehabilitation Act. *Compare Miener,* 673 F.2d at 979 ("damages ... a necessary remedy for discrimination") *with Eastman,* 939 F.2d at 209 ("compensatory damages" not available).[6]

4. A brief review of the Fair Housing Amendments Act's legislative history indicates that physical well-being for the handicapped was a consideration. The House Report noted that the failure to modify "operates to deny them the opportunity to enjoy their premises safely and fully." 1988 U.S.C.C.A.N. at 2186. Thus, the district court may very well determine, after analyzing the appropriate case law, that compensatory damages for physical injury are available to plaintiff under these Acts. Of course, even if the district court makes such a finding, it should not be presumed that a state negligence *per se* claim would then be viable. A holding that damages for physical injury are available does not mean that the statutes are the type of "safety" statutes which normally support a negligence *per se* claim.

5. Because this case has not been tried, the issue of whether the Fair Housing Act precludes an action under the Rehabilitation Act has not been determined. *See Smith v. Robinson,* 468 U.S. 992, 1016–21, 104 S.Ct. 3457, 3470–73, 82 L.Ed.2d 746 (1984) (handicapped plaintiff's exclusive remedy under more comprehensive Education of the Handicapped Act, not Rehabilitation Act or § 1983). While we make no holding

on this issue, this opinion should not be read to sanction simultaneous claims under both statutes.

6. In addition, the Supreme Court has warned against linking the Rehabilitation Act too closely with Title VI. *Alexander v. Choate,* 469 U.S. 287, 294 n. 11, 105 S.Ct. 712, 716 n. 11, 83 L.Ed.2d 661 (1985) ("there are reasons to pause before too quickly extending even the first prong of *Guardians* [intentional discrimination requirement under Title VI] to § 504 [the Rehabilitation Act]"). Moreover, "other considerations counsel hesitation before reading Title VI and § 504 *in pari materia* with respect to the effect/intent issue." *Id.* at 294 n. 11, 105 S.Ct. at 716 n. 11 (discussing history of Title VI and the reasons the intentional discrimination standard was adopted). The key distinction is that "[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Id.* at 295, 105 S.Ct. at 717. "[H]ousing discrimination against handicapped persons is not limited to blatant, intentional acts of discrimination. Acts that have the effect of causing discrimina-

Because the district court has yet to consider fully these arguments and precedents, we must decline to do so here in the first instance.

We hesitate to accept this appeal involving a state negligence claim for one additional reason. Neither the parties nor the district court addressed a related Tennessee provision regarding accommodations for the handicapped. Tenn.Code Ann. § 4–21–601(b)(2)(B) (requiring "reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling"). We make no finding as to what impact, if any, this statute has on this case. It seems self-evident, however, that any decision regarding whether a state law negligence *per se* claim can be based on federal handicapped statutes must include some analysis of the state handicapped provisions. Whether Tennessee law would incorporate federal law in a state cause of action might depend on the policies and provisions of the state handicapped act. *See* Tenn.Code Ann. § 4–21–202(6) (requiring cooperation in the enforcement of the Fair Housing Act and with other federal agencies to achieve the purposes of the chapter).

We conclude that the district court erred by certifying its order as a final and appealable order pursuant to Rule 54(b). Because the claims here are inextricably intertwined, because any decision may be mooted by further proceedings in the district court, because another panel might have to address the same issue again and because the relevant precedent has not been addressed or analyzed by the district court, the Rule 54(b) certification is **VACATED** and this appeal is **DISMISSED.**

tion can be just as devastating as intentional discrimination." 1988 U.S.C.C.A.N. at 2186. Thus, the Title VI "intentional discrimination" requirement does not translate well into cases such as this one where the alleged discrimination is not "intentional" in the usual sense of the word.