David A. DeLEO

v.

CITY OF STAMFORD.

No. 592CV80 (EBB).

United States District Court,
D. Connecticut.

March 14, 1995.

image and page number

Gary Edward Phelan, Lewis H. Chimes, Garrison, Phelan, Levin–Epstein & Penzel, New Haven, CT, for Plaintiff.

Charles A. DeLuca, Michael Gene Clear, Rosemarie Chapdelaine, Ryan, Ryan, Johnson, Clear & DeLuca, Stamford, CT, Richard Allan Robinson, Corporation Counsel, City of Stamford, Stamford, CT, for Defendant.

## RULING ON MOTION TO STRIKE

ELLEN B. BURNS, Senior District Judge.

Plaintiff David DeLeo brings this action against the City of Stamford alleging discriminatory treatment on the basis of disability in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 792 et. seq. He demands a jury trial and seeks reinstatement, back pay, compensatory and punitive damages, costs and attorney's fees. The defendant moves to strike the demand for a jury trial as well as the claims for compensatory and punitive damages. For the reasons set forth below, the motion to strike is denied in part with prejudice and denied in part without prejudice.

### BACKGROUND

On or about March 30, 1988, Mr. DeLeo applied for a position as a police officer in the Stamford Police Department. P.Compl. ¶ 5. In January, 1989, the Stamford Personnel Department notified Mr. Deleo that his application had been rejected. When Mr. DeLeo appealed the rejection, he learned that he was given a "remedial medical disqualification" because of poor reading and written language skills.[1] He also learned that the remedial disqualification would become a permanent disqualification if not corrected within six months. P.Compl. ¶¶ 7–8.

Mr. DeLeo thereafter enrolled in six months of educational training in reading at Housatonic Community College. P.Compl. ¶ 10. In August, 1989, Dr. Robert D. Meier, a licensed psychologist hired by the Stamford Police Department, re-evaluated Mr. DeLeo. He noted improvement in Mr. DeLeo's reading abilities and recommended entrance to the police academy despite reservations as to whether Mr. DeLeo would be able to complete the training requirements successfully. P.Compl. ¶¶ 10–11. In January, 1990, Mr. DeLeo was appointed to the Stamford Police Department. P.Compl. ¶ 12.

Despite Dr. Meier's reservations, Mr. DeLeo completed the requirements of the Basic Training Academy within six months of his appointment. To accommodate his disability, Mr. DeLeo purchased and used a laptop computer and spell-check machine. He received an "average" performance rating for his first performance appraisal in August, 1990. P.Compl. ¶¶ 13–14. Nevertheless, on January 9, 1991, Chief of Police George W. Mayer recommended that Mr. DeLeo be fired for unsatisfactory performance during his probationary period. P.Compl. ¶ 15.

On February 4, 1991, the Stamford Police Commission held a hearing at police headquarters to address Chief Mayer's recommendation. The hearing was continued and completed on March 18, 1991. P.Compl. ¶ 16. At the February 4, 1991 meeting, head of training Richard Priola stated that the Department was not willing to provide the "extraordinary" accommodations of special

---

1. Mr. DeLeo claims that he is dyslexic, that his dyslexia substantially limits his ability to read and write, and that this limitation renders him "disabled" under 29 U.S.C. 706(8).

classes for learning disabilities or high school review classes. P.Compl. ¶ 19. Deputy Chief Walter Young stated that it "would not be practical or realistic for him to carry [a laptop computer and a spellcheck machine] around with him as he answers call [sic] for service and deals with the public." P.Compl. ¶ 22. At the March 18, 1991 hearing, Sergeant Robert Lapiano reviewed Mr. DeLeo's written reports and stated that they were "somewhere in the middle." Sergeant Roger Petrone, Mr. DeLeo's supervisor for the last five to six months of employment, rated Mr. DeLeo's performance in general as "way above average" and his reports in particular as "average." P.Compl. ¶ 21. At the end of the hearing, the Commission members voted 2–1 to uphold the plaintiff's termination. P.Compl. ¶ 17.

## DISCUSSION

### I. Compensatory and Punitive Damages

■ The plaintiff seeks compensatory and punitive damages for the alleged discrimination by the Stamford Police Department. The defendant argues that the claims for compensatory and punitive damages should be stricken from the complaint because the Rehabilitation Act does not authorize such damages. Although the Rehabilitation Act does not specifically provide for compensatory or punitive damages, the court concludes that based on the Supreme Court's recent decision in *Franklin v. Gwinnett County Public Sch.*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), the full panoply of remedies is available for intentional violations of the Act.

■ The Rehabilitation Act of 1973 prohibits federally funded programs from discriminating on the basis of disability. 29 U.S.C. § 794 (1988 & Supp.1990). More specifically, § 504 of the Act provides:

No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794. It is well-established that § 504 creates a private right of action. *See Conrail v. Darrone*, 465 U.S. 624, 630 n. 7, 104 S.Ct. 1248, 1252 n. 7, 79 L.Ed.2d 568 (1984).

In 1978 Congress amended the Rehabilitation Act to establish the remedies available for violations of § 504. 29 U.S.C. § 794a. More specifically, § 505 of the Act provides:

The remedies, procedures and rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

29 U.S.C. § 794a(a)(2). Title VI, however, does not indicate what remedies are available for violations of that statute. 42 U.S.C. § 2000d et seq. Consequently, courts have been divided about the scope of available remedies under both Title VI and the Rehabilitation Act. *Justice v. Pendleton Place Apartments*, 40 F.3d 139 (6th Cir.) (citing *Miener v. Missouri*, 673 F.2d 969 (8th Cir.), cert. denied, 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982) and *Eastman v. Virginia Polytechnic Inst. & State University*, 939 F.2d 204 (4th Cir.1991)).

However, the Supreme Court's recent decision in *Franklin* now provides the dispositive analysis for determining what remedies are available under the Rehabilitation Act. In *Franklin*, the Supreme Court reaffirmed the longstanding principle that "[w]here legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Franklin*, 503 U.S. at 66, 112 S.Ct. at 1033 (quoting *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)).

■ This presumption in favor of the full panoply of remedies applies to express and implied causes of action alike. *Id.* at 70, 112 S.Ct. at 1035. In other words, " 'the question whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive.' " *Id.* at 68, 112 S.Ct. at 1034 (quoting *Davis v. Passman*, 442 U.S.

228, 239, 99 S.Ct. 2264, 2274, 60 L.Ed.2d 846 (1979)). While "we look to indicia of Congress' intent to bestow a private cause of action" in determining whether a statute confers a private right of action, once "an implied right of action emerges, ... we presume—*absent clear congressional direction to the contrary*—that 'the federal courts have the power to award any appropriate relief.'" *Health Care Plan, Inc. v. Aetna Life Ins. Co.,* 966 F.2d 738, 742 (2d Cir.1992) (citing *Franklin,* 503 U.S. at 70, 112 S.Ct. at 1035) [sic]. Thus, the relevant question is not whether the statute demonstrates Congressional intent to authorize a specific remedy, but whether it demonstrates Congressional intent to limit the traditional presumption in favor of any available remedy. *See Franklin,* 503 U.S. at 71, 112 S.Ct. at 1036; *see also Miller v. Spicer,* 822 F.Supp. 158, 167 (D.Del.1993); *Justice,* 40 F.3d at 142.

In *Franklin,* the Court held that money damages are available for intentional violations of Title IX. The Court reasoned that

because Congress enacted Title IX and its amendments[2] in full cognizance of the traditional presumption in favor of all remedies and did nothing to restrict this presumption, damages were an available remedy for violations of Title IX. *Franklin,* 503 U.S. at 70–75, 112 S.Ct. at 1035–37; *see also Spicer,* 822 F.Supp. at 168.

The *Franklin* decision is significant in two respects. First, because of the relationship among Title IX, Title VI and § 504, the Supreme Court's determination that money damages are available under Title IX is dispositive of whether money damages are available under § 504. Second, the analysis developed in *Franklin* governs the inquiry under the Rehabilitation Act as well and inescapably leads to the conclusion that both compensatory[3] and punitive[4] damages are available under the Rehabilitation Act. *Franklin,* 503 U.S. at 64–77, 112 S.Ct. at 1032–38.

Section 504 of the Rehabilitation Act is virtually identical to Title IX, "with the prin-

**2.** The Civil Rights Remedies Equalization Amendment of 1986 abrogated the States' Eleventh Amendment immunity and provided that, in a suit against a State, "remedies (including remedies both at law and in equity) are available for [violations of Title IX] to the same extent as such remedies are available for such a violation in a suit against any public or private entity other than a State." 42 U.S.C. § 2000d–7(a)(2). Through this amendment, Congress implicitly acknowledged that money damages are available under Title IX. *Franklin,* 503 U.S. at 78, 112 S.Ct. at 1039 (Scalia, J., concurring). In addition, the Civil Rights Restoration Act of 1987 broadened the coverage of Title IX's antidiscrimination provision. *Id.* at 70, 112 S.Ct. at 1035 (citing Pub.L. 100–259, 102 Stat. 28 (1988)). Although this Act corrected an evidently unacceptable decision in *Grove City College v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), it did not restrict the implied right of action recognized in *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) or in any way alter the traditional presumption in favor of all appropriate remedies. *Id.* Thus, nothing in the history of Title IX acted as "clear direction" by Congress to limit the available remedies for a violation of that Act.

**3.** Nearly every court that has addressed this issue following *Franklin* has determined that compensatory damages are available under § 504. *Rodgers v. Magnet Cove Pub. Schs.,* 34 F.3d 642, 644–45 (8th Cir.1994); *Waldrop v. Southern Co. Servs.,* 24 F.3d 152, 156–57 (1994); *Pandazides v. Virginia Bd. of Educ.,* 13 F.3d 823, 829–32 (4th

Cir.1994); *see Howe v. Hull,* 873 F.Supp. 72, 74 (N.D.Ohio); *Kedra v. Nazareth Hospital,* 868 F.Supp. 733, 737–739 (E.D.Pa.); *Spicer,* 822 F.Supp. at 166–68; *Kuntz v. City of New Haven,* 1993 WL 276946 *2 (D.Conn.); *Ali v. City of Clearwater,* 807 F.Supp. 701, 704–05 (M.D.Fla. 1992); *Kraft v. Memorial Medical Center, Inc.,* 807 F.Supp. 785, 791 (S.D.Ga.1992); *Doe v. District of Columbia,* 796 F.Supp. 559, 571–73 (D.D.C.1992); *Tanberg v. Weld County Sheriff,* 787 F.Supp. 970, 972–74 (D.Col.1992); *but see Tyler v. Manhattan,* 849 F.Supp. 1442 (D.Kan.) (relying on several pre-*Franklin* cases to hold that compensatory damages are not available and distinguishing *Franklin* on the basis of the intentional discrimination alleged in *Franklin*); *U.S. v. Forest Dale, Inc.,* 818 F.Supp. 954, 970 (N.D.Tex.1993) (relying on a pre-*Franklin* case, *Shinault v. American Airlines, Inc.,* 738 F.Supp. 193, 198–99 (S.D.Miss.1990), *aff'd. in part, rev'd in part,* 936 F.2d 796 (5th Cir.1991) to hold that § 504 damages are limited to retrospective equitable damages).

**4.** Two courts that have addressed the availability of punitive damages under the Rehabilitation Act following *Franklin* have authorized punitive damages. *See Howe,* 1994 WL 682951 at *1; *Kedra,* 868 F.Supp. at 740; *but see Williams v. Express Airlines I, Inc.,* 1993 WL 246228 *1 (W.D.Tenn.) (citing a pre-*Franklin* case, *Gelman v. Department of Education,* 544 F.Supp. 651, 654 (D.Colo.1982), to support the determination that the Rehabilitation Act does not allow punitive damages).

cipal exception being the class protected. As a result, the *Franklin* court repeatedly analogized the two statutes." *Waldrop*, 24 F.3d at 157 n. 5 (11th Cir.1994) (citing *Franklin*, 503 U.S. at 70, 112 S.Ct. at 1035).[5] Additionally, "it is well-established that Congress intended the same remedies be available under Title IX and Title VI." *Id.* (citing *Guardians Assn. v. Civil Service Comm'n.*, 463 U.S. 582, 594, 103 S.Ct. 3221, 3228, 77 L.Ed.2d 866 (1983) (White, J., plurality)). Moreover, the Court in *Franklin* pointed out that in *Guardians*, "a clear majority expressed the view that damages were available under Title VI. . . ." *Franklin*, 503 U.S. at 70, 112 S.Ct. at 1035. (citations omitted). Thus, *Franklin* authorizes damages not only for Title IX, but Title VI cases as well. Because Title VI remedies are also available to § 504 litigants, *Franklin* must be·read to authorize damage awards under § 504 also.

More significantly, the traditional presumption in favor of all appropriate remedies applies with equal force to the Rehabilitation Act. As Congress enacted both § 504 of the Rehabilitation Act and the amendments thereto [6] in full cognizance of this traditional presumption, without demonstrating its intent to limit the presumption in any way, the full panoply of remedies, including compensatory and punitive damages, must be available for violations of § 504.

Although *Franklin* did not address specifically the availability of punitive damages under Title IX, there is no adequate basis, in the *Franklin* opinion or elsewhere, for exempting punitive damages from the full spectrum of remedies generally available for violation of a federal statute such as Title IX or the Rehabilitation Act. First, punitive damages doctrine has been accepted as "settled law by nearly all state and federal courts, including [the Supreme Court]," for more than a century. *Smith v. Wade*, 461 U.S. 30, 35, 103 S.Ct. 1625, 1629, 75 L.Ed.2d 632 (1983) (citations omitted). Moreover, a majority of the Supreme Court has already rejected the proposition that Congress "acted expressly when it intended to approve punitive damages." *Id.* at 35 n. 5, 103 S.Ct. at 1629 n. 5. Finally, the "appropriateness" of punitive damages depends on the intent of the defendant in each case, a determination that "rests in the discretion of the . . . trier of fact." 22 Am.Jur.2d § 739.

■ Thus, punitive damages are included within the full panoply of remedies and must be available for a violation of the Rehabilitation Act "absent clear direction to the contrary by Congress." *Franklin*, 503 U.S. at 70, 112 S.Ct. at 1035; *see also Fitzgerald v. Green Valley Area Educ. Agency*, 589 F.Supp. 1130, 1138 (S.D.Iowa 1984) (concluding that a full spectrum of remedies presumably includes punitive damages). Because the court does not find "clear direction" by Congress to limit the remedies available under the Rehabilitation Act, the motion to strike the claims for compensatory and punitive damages is denied.[7]

**5.** Title IX provides, in pertinent part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a).

**6.** The Civil Rights Remedies Equalization Amendment of 1986 and the Civil Rights Restoration Act of 1987, *see supra* n. 2, also amended § 504 of the Rehabilitation Act. *Franklin*, 503 U.S. at 71, 112 S.Ct. at 1036.

**7.** The court recognizes that several factors weigh in favor of *implying* limitations upon the remedial scope of the Rehabilitation Act. *See Franklin*, 503 U.S. at 77, 112 S.Ct. at 1039 (Scalia, J., concurring). First, the principle relied on in *Franklin*, dating back to *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), is a remedial principle. *See Marbury*, 5 U.S. at 163

(arguing that, under a government of laws, the law must furnish a "remedy for the violation of a vested legal right"); *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946) (stating that "where legal rights have been invaded, ... federal courts may use any available remedy to *make good the wrong done*"). The purpose of punitive damages, however, is not to compensate but to punish and deter. *Day v. Woodworth*, 54 U.S. (13 How.) 363, 371, 14 L.Ed. 181 (1852) ("[T]he question will not admit of argument."). Second, although Congress did not specifically prohibit punitive damages under the Rehabilitation Act, it did establish what many would consider a punitive remedial scheme— that is, the termination of federal funding for violations of the Act. *See Turner v. First Hospital Corp.*, 772 F.Supp. 284, 287 n. 2 (E.D.Va.1991) (arguing that punitive damages are inappropriate under Spending Clause legislation because "the most appropriate form of punishment to a dis-

## II. *Jury Trial*

■ The plaintiff demands a jury trial for his § 504 claim. The defendant argues that the demand for a jury trial should be stricken from the complaint because the Rehabilitation Act does not authorize a jury trial and the Seventh Amendment does not require it.

■ In determining whether a plaintiff is entitled to a jury trial in a case arising under federal legislation, a court must first look to the statute. If the statute is silent regarding the right to a jury trial, the court must inquire whether the Seventh Amendment constitutionally mandates the right to a jury trial. *Waldrop*, 24 F.3d at 155 (citing *Tull v. United States*, 481 U.S. 412, 417 n. 3, 107 S.Ct. 1831, 1835 n. 3, 95 L.Ed.2d 365 (1987); *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 n. 3, 110 S.Ct. 1339, 1344 n. 3, 108 L.Ed.2d 519 (1990)).

The Seventh Amendment preserves a right to a jury trial "in Suits at common law, where the value in controversy exceeds twenty dollars." The phrase "Suits at common law" has been interpreted to encompass legal rights and remedies that are "enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974).

■ The Supreme Court has developed a two-pronged inquiry, examining both the nature of the suit and the remedy sought, to determine whether a suit is one "at common law" for purposes of the Seventh Amendment. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990). "First, we compare the statutory action to 18th-century actions brought in the courts of

---

criminating employer is the termination of its federal funding and not an award of punitive relief to a private litigant").

Third, in amending the Rehabilitation Act to authorize Title VI remedies for § 504 litigants, Congress, at least in some respects, transformed § 504 from a "general right to sue" statute to one with a "set of 'circumscribed remedies.'" *See Landgraf v. USI Film Prods.*, — U.S. —, — n. 38, 114 S.Ct. 1483, 1508 n. 38, 128 L.Ed.2d 229 (1994) (explaining why the traditional presumption in favor of all appropriate remedies does not apply to Title VII). In other words, although Title VI did not specify what remedies were available for violations of that statute, the amendment to the Rehabilitation Act may be interpreted as authorizing those judicially accepted Title VI remedies.

Finally, the Civil Rights Act of 1991 amended 29 U.S.C. § 794a(a)(1) to provide a *limited* right to compensatory and punitive damages for intentional employment discrimination against the disabled. 42 U.S.C. § 1981a(a)(2)–(3); *see also Tyler*, 849 F.Supp. 1442. Because the Civil Rights Act of 1991 has been interpreted as expanding significantly the monetary relief available to victims of employment discrimination, *see Landgraf*, — U.S. at —, 114 S.Ct. at 1491, it seems paradoxical to interpret the Rehabilitation Act as authorizing an *unlimited* right to compensatory and punitive damages.

Nevertheless, this court is constrained by the broad language of the Supreme Court in *Franklin*. First, as noted above, the *Franklin* opinion does not provide any basis to exempt punitive damages from the full spectrum of remedies generally available in such tort-like causes of action. *See Smith v. Wade*, 461 U.S. at 47–49, 103 S.Ct. at 1636–37. Second, the majority in *Franklin* did not accept the concept of judicially implied

limitations on the remedial scope of statutes such as the Rehabilitation Act. *See Franklin*, 503 U.S. at 77, 112 S.Ct. at 1039 (Scalia, J., concurring). Rather, it made clear that the traditional presumption in favor of all available remedies applies "absent clear direction to the contrary by Congress." *Id.* at 70, 112 S.Ct. at 1035.

The provision for termination of federal funding for violations of the Rehabilitation Act cannot be interpreted as clear direction from Congress to prohibit punitive damages or to "abandon the traditional presumption in favor of all available remedies." *Id.; see also id.* at 73, 112 S.Ct. at 1037. Similarly, the amendment making Title VI remedies available to § 504 litigants cannot be interpreted as clear direction from Congress when Title VI does not specify what remedies are available for violations of that statute. Although case law had developed, the breadth of damages under Title VI was not settled. *See Rivera Flores v. Puerto Rico Telephone Co.*, 776 F.Supp. 61, 63 (D. Puerto Rico 1991); *see also* Note, Safeguarding Equality for the Handicapped: Compensatory Relief under Section 504 of the Rehabilitation Act, 1986 Duke L.J. 197. Because "we cannot safely infer anything about congressional intent from the divided contemporaneous judicial opinions," *Smith v. Wade*, 461 U.S. at 93, 103 S.Ct. at 1659 (O'Connor, J., dissenting), we cannot interpret § 505 as clear congressional intent to alter the traditional presumption in favor of all available relief. Finally, although the Civil Rights Act of 1991 amends the Rehabilitation Act along with the Americans with Disabilities Act, the Civil Rights Act does not apply retroactively. *See Landgraf*, — U.S. —, 114 S.Ct. 1483, 128 L.Ed.2d 229. Thus, the full spectrum of remedies, including punitive damages, must apply without limitation in this case.

England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* (quoting *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987)). The second inquiry is the more critical of the two. *Id.* (citing *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989)).

The Rehabilitation Act of 1973 doe not indicate on its face what procedures are available to litigants. 29 U.S.C. § 794. Rather, as in the case of remedies, it borrows the procedures and rights of Title VI. 29 U.S.C. § 794(a). However, because neither § 504 nor Title VI provide any guidance as to the availability of a jury trial, the court must determine, under the two-pronged test set out by the Supreme Court, whether a jury trial is constitutionally required under the Seventh Amendment.

First, actions under § 504 of the Rehabilitation Act are comparable to actions brought before courts of law in 18th-century England—namely, an action in tort to redress discrimination and an action for breach of an employment contract. *Waldrop,* 24 F.3d at 156 (citing *Curtis,* 415 U.S. at 196 n. 110, 94 S.Ct. at 1009 n. 110 ("An action to redress racial discrimination may also be likened to an action for defamation or intentional infliction of mental distress.")). Second, and more importantly, actions under § 504 allow plaintiffs the full spectrum of equitable and legal remedies. *See Franklin,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208. Thus, the Seventh Amendment preserves the right to a jury trial in appropriate § 504 cases.

Because the plaintiff in this case seeks compensatory and punitive damages, or legal relief, the Seventh Amendment preserves the right to a jury trial. Therefore, the motion to strike the demand for a jury trial is denied.

### CONCLUSION

For the foregoing reasons, the motion to strike the claim for compensatory damages [Doc. No. 33] is denied with prejudice. The motion to strike the claim for punitive damages [Doc. No. 33] is denied without prejudice. The motion to strike the demand for a jury trial [Doc. No. 33] is denied with prejudice.

SO ORDERED.